# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Records and information associated with the cellular telephone assigned call number (619) 376-9772, that are stored at premises controlled by T-Mobile USA Inc.

Case No. '19 MJ - 3008

FILED
JUL 18 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of Fentanyl Resulting in Death |

The application is based on these facts:

See attached affidavit of DEA Special Agent Sarah Duray

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Sarah Duray, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/18/19

*Judge's signature*

City and state: San Diego, California

Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1
**Location to be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number (619) 376-9772, that are stored at premises controlled by T-Mobile USA Inc. ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

## ATTACHMENT B-1
### Items to be Seized

I.    Service of Warrant

The officer executing the warrant shall permit T-Mobile USA Inc. ("the Provider"), as custodian of the Target Data described in Section II below, to locate the information and deliver the same to the officer.

II.    Items to be Seized

Items subject to seizure from T-Mobile for the period from October 1, 2018 through November 15, 2018:

a.    Subscriber information for T-Mobile telephone number (619) 376-9772;

b.    Telephone toll data concerning incoming and outgoing telephone calls, text messages, and short message service ("SMS") messages, between T-Mobile telephone number (619) 376-9772 and other telephone numbers; and

c.    Cell site geo-location data relating to calls placed and received by the telephone assigned to T-Mobile telephone number (619) 376-9772.

which are evidence of violations of 21 U.S.C. §§ 841 and 846.

# AFFIDAVIT IN SUPPORT OF A CELL SITE SEARCH WARRANT

I, Sarah Duray, being duly sworn, declare and state as follows:

## I.

## BACKGROUND AND EXPERIENCE OF AFFIANT

1. I am a Special Agent Criminal Investigator for the United States Drug Enforcement Administration (DEA), and I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered by law to conduct investigations and to make arrests for felony offenses. I was hired by the DEA in May of 2018, and I attended the DEA academy for approximately eighteen (18) weeks. At the DEA Academy, I was trained in the various aspects of conducting narcotics investigations. In September 2018, I was sworn as a DEA Special Agent (SA) and was assigned to DEA San Diego Field Division (SDFD).

2. While with the DEA, I have participated in approximately 100 narcotics investigations and more than 50 arrests for violations of the California Health & Safety (H&S) Code. These investigations and arrests involved: (1) unlawful importation, exportation, manufacture, possession with intent to distribute and distribution of narcotics; (2) the laundering of narcotics proceeds and monetary instruments derived from narcotics activities; and (3) conspiracies associated with narcotics offenses. These investigations have involved debriefing defendants, witnesses and informants, conducting surveillance, assisting in court ordered interceptions, executing search warrants, seizing narcotics and narcotics-related assets and making arrests for narcotics-related offenses.

3. I am currently assigned to the DEA San Diego Field Division's (SDFD) San Diego County Integrated Narcotics Task Force (NTF) Team 10 and have been since September 2018. NTF Team 10 is comprised of DEA Special Agents (SAs), Task Force Agents (TFAs) and Task Force Officers (TFOs) from the San Diego Police Department (SDPD), Department of Homeland Security Investigations (HSI), Federal Bureau of

Investigation (FBI), and Department of Health Care Services (DHCS). NTF Team 10 primarily investigates illegal drug trafficking organizations (DTOs) operating in the United States and internationally, including those DTOs whose operations involve the distribution of wholesale quantities of fentanyl, oxycodone, hydrocodone, other controlled pharmaceutical drugs, cocaine, methamphetamine, marijuana, heroin and hashish in and around the San Diego, California area. Team 10 focuses on investigating illegal drug distribution related to drug overdose deaths in San Diego County.

4. Prior to being employed with the DEA, I was a Police Officer for the SDPD from September 2016 to May 2018. I was assigned to patrol in Mid-City Division where I was responsible for responding to 911 radio calls as well as investigating and assisting with the investigations of over 100 crimes occurring in the city of San Diego.

5. Through my training, experience, and interaction with more experienced DEA SAs, TFOs, and other drug investigators, I have become familiar with the methods employed by drug traffickers, in particular, practices to smuggle, safeguard, transport, and distribute drugs, and to collect and launder drug-related proceeds. These methods include the use of wireless communications technology (such as cellular telephones) to both send text messages and to make voice calls, conduct counter-surveillance, further smuggling schemes tied to legitimate businesses, employ false or fictitious identities, and use coded or encrypted communications in an attempt to avoid detection by law enforcement and to circumvent drug investigations. I know that during the course of these wire and electronic communications, organization members routinely use coded references and/or encryption in an effort to elude law enforcement detection, and that drug traffickers often confine their illegal telephonic communications to well-trusted organizational members and other high-level drug traffickers.

6. Based on my training and experience, I am aware that it is a common practice for drug traffickers to work in concert with other individuals, and to do so by using cellular telephones to maintain communication with co-conspirators in order to further their criminal activities. For instance, people who distribute narcotics are frequently in

2

telephonic contact with their customers, suppliers, and co-conspirators in order to know when and where to both retrieve and deliver the drugs for which they are responsible. That creates several categories of cellular-phone-related evidence, including subscriber information, call history data, and cell-site geo-location data which may reflect communications among and between co-conspirators, and the approximate locations of such communications.

## II.
## **PURPOSE OF AFFIDAVIT**

7. This affidavit supports applications to search and seize subscriber information, telephone toll data, and cell-site geo-location data for the period of September 1, 2018 through October 25, 2018, for the following telephone numbers:

   a. A T-Mobile cellular telephone bearing number (619) 376-9772, with pending subscriber information and believed to be used primarily by Tony DAVIS (hereinafter referred to as **Target Telephone Data 1**);

   b. A Sprint cellular telephone bearing number (619) 453-2186, with pending subscriber information and believed to be used primarily by Travis Ray BALLOU (hereinafter referred to as **Target Telephone Data 2**); and

   c. A T-Mobile cellular telephone bearing number (619) 727-1134, with pending subscriber information and believed to be used primarily by Jackie Christine GALVAN (hereinafter referred to as **Target Telephone Data 3**);

(collectively, the **Target Telephone Data**), as described in Attachments A-1 through A-3.

8. As set forth below, probable cause exists to believe that the **Target Telephone Data** contains evidence of distribution of controlled substances resulting in death and conspiracy to do the same, in violation of 21 USC §§ 841 and 846.

9. All of the conclusions and beliefs set forth in this affidavit are based on my training and experience, conversations with other agents who have extensive experience in drug-trafficking investigations, and my knowledge of the facts of this investigation. All of the dates, times, and amounts listed in this affidavit are approximate. Conversations and

3

discussions below are set forth in substance unless noted. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to support the issuance of the requested warrants.

10. Except as otherwise noted, when I assert that a statement was made, the information was provided by a DEA agent or another law enforcement officer with whom I have spoken or whose reports or statements I have reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth my own observations but rather has been provided directly or indirectly by Team 10 SAs/TFAs/TFOs or other law enforcement officers who conducted such surveillance.

## III.
## PROBABLE CAUSE

11. On October 24, 2018, National City Police Department (NCPD) Officers were called to respond to a report of a deceased female, who was subsequently identified as Jacqueline Christine GALVAN, who suffered a drug overdose. GALVAN was found at her friend, AC's, residence located at 1938 East 17th Street, National City, California 91950.

12. At approximately 7:03 p.m., NCPD Officers S. Anderson and J. Taylor responded to the aforementioned residence. After numerous attempts at resuscitation, paramedics on scene pronounced GALVAN deceased. GALVAN's black iPhone was found on the chair where she had been sitting (**Target Telephone Data 3**).

13. Team 10 agents responded to the residence at approximately 8:30 p.m. and took custody of **Target Telephone Data 3**. Additionally, agents spoke with AC. AC stated she knew of GALVAN's heroin usage and would often try to talk GALVAN out of using. AC said she had communicated with GALVAN earlier in the day and learned that GALVAN had overdosed the previous day (Tuesday, October 23, 2018), was taken to the hospital, and was subsequently released. GALVAN told AC she had overdosed from the pre-loaded syringes she obtained from her source of supply (SOS). AC stated

4

1  GALVAN arrived at her residence in the early afternoon. According to AC, GALVAN
2  asked if she could borrow twenty dollars to pay back a friend, and AC agreed. Shortly
3  thereafter, AC observed GALVAN walk out to a vehicle that had pulled up in front of
4  the residence and speak with the individual in that vehicle. AC stated GALVAN then
5  walked back to the front yard of the residence and sat down on a sofa chair while AC
6  made a phone call. A few minutes later, AC noticed that GALVAN appeared
7  unconscious and in an odd position on the sofa chair. AC attempted to wake GALVAN,
8  but was unsuccessful. AC then called 911.

9   14.  On October 25, 2018, San Diego Superior Court Judge Charles G. Rodgers
10 signed a California State search warrant (#58649), authorizing both the search of **Target**
11 **Telephone Data 3** and its use in a subsequent investigation of GALVAN's death.
12 Agents subsequently reviewed the contents of **Target Telephone Data 3** and then
13 utilized it in an undercover manner, posing as GALVAN.

14  15.  While conducting a review of the text message communications in **Target**
15 **Telephone Data 3**, agents identified suspected drug-related text messages between
16 GALVAN and a contact listed only as "Mr Mans!" with an associated telephone number
17 619-453-2186. "Mr Mans!" was later identified as BALLOU, after BALLOU
18 personally appeared to deliver heroin to GALVAN. The text messages indicated
19 GALVAN had previously obtained suspected heroin from BALLOU on October 22, 23,
20 and 24, 2018. Text messages from October 24, 2018 indicated that, at approximately
21 4:14 p.m., just hours before GALVAN's death, BALLOU delivered heroin to
22 GALVAN at AC's residence. Then, at 4:20 p.m., BALLOU told GALVAN to be
23 careful and that he meant to bring her Narcan but forgot. The next day, October 25,
24 2018, BALLOU texted GALVAN twice checking on her and stating he hoped she was
25 okay.

26  16.  On October 25, 2018, agents, acting in an undercover (UC) capacity as
27 authorized by the aforementioned search warrant, began using **Target Telephone**
28 **Data 3** by posing as GALVAN to coordinate the purchase of an additional quantity of

5

heroin from BALLOU. Ultimately, BALLOU agreed to meet agents (posing as GALVAN) at approximately 3:00 p.m. at a restaurant parking lot located at 2140 E. Plaza Blvd., National City, California, in order to deliver heroin. When BALLOU arrived at the parking lot, he identified himself and his vehicle and told the agents where it was parked. Agents then detained BALLOU.

17. At the restaurant parking lot, agents searched BALLOU's vehicle, based on probable cause that the vehicle contained contraband, and called BALLOU's phone number to see if they could locate BALLOU's phone (**Target Telephone Data 2**), which they found on the driver's side floorboard of the vehicle. Agents also found two loaded and capped syringes (which later tested positive for fentanyl and heroin) under the driver's seat of the vehicle. Agents arrested BALLOU and transported him to the DEA SDFD for processing and interviewing.

18. During a post-arrest interview at the SDFD, BALLOU waived his *Miranda* rights and admitted that he came to the restaurant to sell heroin to GALVAN. BALLOU stated he met GALVAN on October 22, 23 and 24, 2018. BALLOU stated he made the heroin stronger at GALVAN's request the second time he provided her with heroin (on October 23, 2018). BALLOU also told agents that, on October 24, 2018, he learned from GALVAN that she had overdosed the previous day from the heroin he gave her and was taken to the hospital. Nonetheless, BALLOU admitted that the following day (the day GALVAN died), he delivered more heroin to GALVAN in National City, California and meant to bring her Narcan in case she overdosed again, but forgot it at his residence.

19. When questioned about where he obtained the heroin, BALLOU stated he did not wish to disclose any information regarding his SOS.

20. BALLOU then signed two consent forms authorizing agents to search his bedroom and **Target Telephone Data 2**.

21. During a review of **Target Telephone Data 2**, agents found drug related text message communications between BALLOU and a contact listed as "Ant Black"

6

with an associated phone number of 619-376-9772 (**Target Telephone Data 1**) during the dates of October 23, 24 and 25, 2018. A query of law enforcement databases listed the user of **Target Telephone Data 1** as Tony DAVIS who resides at 6833 Amherst Street, San Diego, California 92129.

22. During a search of **Target Telephone Data 2**, agents encountered a text message on October 23, 2018, between BALLOU and DAVIS. During the text message BALLOU texted DAVIS the following;

> "This chic I sold a 10$ sac to. Over dosed last night bro they had to give her narcan. And they found fentanal in system. So your stuff def has fetnal in it. Crazy I barely made her a big issue. Hell I can do half gram shots bro."

23. Furthermore, agents observed text messages between BALLOU and DAVIS on October 23, 24 and 25, 2018, showing the additional sales of narcotics. Based on a review of BALLOU's cell phone, agents suspect DAVIS is BALLOU's SOS who ultimately contributed to GALVAN's death.

24. On November 15, 2018, agents executed a judicially authorized California State search warrant (#58854) at DAVIS's residence located at 6833 Amherst Street, San Diego, California 92115 and seized distributable quantities of both "crack" cocaine and heroin, and indicia of drug sales, including a functioning digital scale with residue and packaging materials in the form of numerous small, unused clear plastic Ziploc style plastic baggies. Notably, a pre-filled syringe found at the location later tested positive for fentanyl and heroin. Agents also seized **Target Telephone Data 1**.

25. Agents arrested DAVIS, who later provided a post-*Miranda* statement where he admitted to selling drugs, including crack cocaine, heroin, and methamphetamine. According to DAVIS, the drugs agents found at his residence were the drugs he was selling.

26. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, there is probable cause to believe that BALLOU

7

used **Target Telephone Data 2** to coordinate the distribution of federally controlled substances on or about October 23, 24 and 25, 2018 with his SOS, DAVIS, who used **Target Telephone Data 1**. This ultimately resulted in the overdose death of GALVAN who used **Target Telephone Data 3** to buy from BALLOU during the aforementioned dates.

## BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANT

27. Based on my training, experience, consultations with law enforcement officers experienced in narcotics investigations, and all the facts and opinions set forth in this Affidavit, I am aware that:

   a. Drug dealers will use cellular telephones because they are mobile and provide instant access to telephone calls, text and voice messages, and other applications used for communication.

   b. Drug dealers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

   c. Drug dealers will use cellular telephones in order to coordinate the receipt and delivery of their illicit cargo.

   d. Drug dealers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

   e. Drug dealers use cellular telephones registered to others, or, if permitted by the cellular telephone service provider, registered to no one to hide their identities. Subscriber information collected and stored by telephone service providers will reflect registration and billing information associated with a particular cellular telephone and, therefore, reveal facts that confirm ownership, dominion, and control.

   f. Drug dealers create a record of their approximate physical locations when they place or receive telephone calls during acts in furtherance of the conspiracy,

8

and other acts, because cellular telephone service providers collect and store cell-site geo-location data, which information can be used to calculate the approximate location of a telephone call.

28. Based on the above, there is reason to believe that DAVIS carried and/or used the cellular phone associated with T-Mobile telephone number (619) 376-9772 from September 1, 2018 through October 25, 2018.

29. Based on the above, there is reason to believe that BALLOU carried the cellular phone associated with Sprint telephone number (619) 453-2186 from September 1, 2018 through October 25, 2018.

30. Based on the above, there is reason to believe that GALVAN carried and/or used the cellular phone associated with T-Mobile telephone number (619) 727-1134 from September 1, 2018 through October 24, 2018.

31. Based on my training and experience, and my consultation with other law enforcement officers experienced in obtaining telephone data from T-Mobile, Sprint, and other cellular telephone service providers, I am aware that T-Mobile and Sprint routinely collect and store data concerning the telephone numbers that they issue. Among the data that T-Mobile and Sprint collect and store are: (i) detailed subscriber information; (ii) detailed information concerning incoming and outgoing telephone calls placed and received by a telephone assigned to a telephone number that they issue; (iii) detailed information concerning outgoing direct calls, text message, and SMS messages, placed and received by a telephone number that they issue; and (iv) detailed information concerning cell-site geo-location data for a telephone and or a direct connection number issued by that they issue, which data can be used to calculate the approximate location of a telephone call involving such a number, as described in Attachments B-1 through B-3.

## CONCLUSION

32. Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this Affidavit, I submit there is probable cause to believe that evidence of the drug-trafficking activities of BALLOU, DAVIS, and GALVAN, and

9

known and unknown co-conspirators, are among the Target Data collected and stored by T-Mobile and Sprint, including: (i) subscriber information for the phones above; (ii) information concerning incoming and outgoing telephone calls, text messages, and SMS messages, placed and received by the phones above, from September 1, 2018 through October 25, 2018; and (iii) information concerning cell site geo-location data for calls placed by or received by the phones above from October 1, 2018 through November 15, 2018.

Sarah Duray
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 18th day of July 2019.

HONORABLE KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

10